IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01390-CYC

CARTER B. BELL,

     Plaintiff/Counter Defendant,

v.

USAA CASUALTY INSURANCE COMPANY,

     Defendant/Counter Claimant.

---

## ORDER

---

**Cyrus Y. Chung, United States Magistrate Judge.**

     Defendant USAA Casualty Insurance Company ("USAA") moves for summary judgment on Plaintiff Carter B. Bell's claims against it and on its counterclaim for a declaratory judgment. ECF No. 39. All of the plaintiff's claims and the defendant's counterclaim relate to whether an insurance policy covered a May 11, 2023 incident at a piece of real property. Because the policy did not cover the loss claimed by the plaintiff, the motion is granted.

## <u>LEGAL STANDARD</u>

     A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986). "A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Wright ex rel. Tr. Co. of Kan. v. Abbott Lab'ys, Inc*., 259 F.3d 1226, 1231–32 (10th Cir. 2001) (quotation marks omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*,

477 U.S. at 248. The dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "The moving party bears both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quotation marks omitted).

If the moving party satisfies its initial burden, the non-moving party "may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Id.* (quotation marks omitted). The specific "facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007). Affidavits and testimony "must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1030–31 (10th Cir. 2022). "The court views the record and draws all favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc*., 431 F.3d 1241, 1255 (10th Cir. 2005).

## **FACTS**

The parties stipulated to undisputed facts relevant to the motion for summary judgment. ECF No. 37. Each party also asserts specific additional facts in their briefs that rely on evidence in the record.

### A.    **The Incident**

USAA insurance policy 00564 10 45 91A (the "Policy") provided coverage for the period October 10, 2022 to October 10, 2023, subject to its terms, conditions, and exclusions, for the real property formerly owned in part by the plaintiff and located at 5541 E. Oxford Avenue,

Cherry Hills Village, Colorado 80113-5120 (the "Property"). ECF No. 37 ¶ 1; ECF No. 37-1 at USAA-CIC_Bell_00002. On May 11, 2023, water accumulated in the Property's basement (the "Incident"). ECF No. 37 ¶ 6. The Incident coincided with a period of heavy rainfall in the area of the Property. *Id*. ¶ 7. Since the Incident, the plaintiff has not had any pipes repaired in the interior of the Property, other than the basement baseboard pipes, and no surface water or ground water has entered the Property (except, perhaps, a de minimus amount on the soles of shoes). *Id*. ¶ 8. The water that caused the Incident did not originate from an identifiable location within the house. *Id*. ¶ 9.

On June 2, 2023, the plaintiff signed a contract with Groundworks Colorado ("Groundworks") to install, among other things, "AquaStop Basement Gutter," "AquaStop CrawlSeal," "AquaStop CrawlDrain," and "AquaStop Crawlspace Single." ECF No. 28-5. In the Groundworks contract, the plaintiff acknowledged that Groundworks recommended he install a "full perimeter drainage system with sump pump." *Id*. at USAA-CIC_Bell_000158. As part of the services Groundworks performed, they removed one sump pump and installed two or three new sump pumps. ECF No. 28-2 at 45:10-18. No surface water or ground water has entered the Property since Groundworks completed these services. ECF No. 16 ¶ 23; ECF No. 20 ¶ 23.

On June 7, 2023, the plaintiff initiated a claim with USAA for the damage caused by the Incident. He also told USAA that his yard was not flooded, but there was "lots of rain." ECF No. 37 ¶ 10. On June 14, 2023, USAA issued a $10,000.00 payment, which was the policy limit under the plaintiff's water backup or sump pump overflow endorsement. *Id*. ¶ 12.

On June 27, 2023, a structural engineer inspected the Property. ECF No. 28-9. The structural engineer issued a report on August 7, 2023, which noted that "earlier this year a significant rain event caused flooding in the crawl space and basement area" and "during this

event, water appeared to be entering from [the] west side of the crawl space which traveled into the basement at the common wall between the basement and crawl space." *Id.* at BELL_000864. The report also recommended, among other things, "that the drainage [be] improved along the west side of the residence," that an interior drain system be installed to "help mitigate any future water intrusion into the basement area," and that the foundation be "monitored periodically for any signs of any significant cracking or movement and efforts should be made to maintain dry conditions in the basement." *Id.*

The parties dispute exactly when, but the defendant eventually denied coverage, citing its understanding that the Policy excluded coverage of water damage arising from exterior water coming into the dwelling. *See* ECF No. 37 ¶¶ 13–15.

## B.     Relevant Policy Provisions

The Policy provided coverage for the Property, subject to certain limitations and exclusions. Section I of the Policy is titled "Losses We Cover" and states, in part:

> COVERAGE A - DWELLING PROTECTION COVERAGE AND COVERAGE B – OTHER STRUCTURES PROTECTION COVERAGE
>
> We insure against "sudden and accidental", direct, physical loss to tangible property described in PROPERTY WE COVER – COVERAGES A and B unless excluded in Section I - LOSSES WE DO NOT COVER.

ECF No. 37-1 at USAA-CIC_Bell_000031. As referenced in that section of the Policy, "Section I – Losses We Do Not Cover" follows thereafter, providing in part:

> LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION

> 1.   Unless otherwise stated in 3. below we do not insure for damage consisting of or caused directly or indirectly by any of the following, regardless of:
>
>    (i)  The cause of the excluded event or damage that; or
>    (ii) Other causes of the loss that; or

4

      (iii)Whether the event or damage occurs, suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of these to; or

      (iv)Whether other causes or events act concurrently or in any sequence with the excluded event to

produce the loss.

         a. …

         k. Settling; cracking shrinking bulging or expansion of pavements; patios; foundations; walls; floors; roofs or ceilings;

         p. …

2. If items 1.f. through 1.p. above cause water damage which is not otherwise excluded, we cover the resulting water damage. This includes the cost of tearing out and replacing any part of a building necessary to repair a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance. We do not cover loss to the system or appliance from which this water escaped.

3. If any items in 1. above directly causes a "named peril(s)" to occur, the resulting damage produced by the "named peril(s)" is covered unless otherwise excluded or excepted elsewhere in the policy.

*Id*. at USAA-CIC_Bell_000032–33. "Section I – Losses We Do Not Cover" contains another exclusion section. The relevant portions of that language are as follows.

LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION

1. We do not insure for damage consisting of or caused directly or indirectly by any of the following, regardless of:

      (i) The cause of the excluded event or damage that; or

      (ii) Other causes of the loss that; or

      (iii) Whether the event or damage occurs, suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of these to; or

      (iv) Whether other causes or events act concurrently or in any sequence with the excluded event to

produce the loss.

         a. …

5

c. Water damage arising from, caused by or resulting from human or animal forces, any act of nature, or any other source. Water damage means damage caused by or consisting of:

    (1) Flood, surface water, waves, tidal waves, storm surge, tsunami, any overflow of a body of water, or spray from any of these, whether or not driven by wind; or

    (2) …

    (3) Water or water-borne material which backs up through sewers or drains or which overflows from a sump pump, sump well or similar device designed to drain water from the foundation area; or

    (4) Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps through a building, sidewalk, driveway, foundation, swimming pool or other structure; . . .

*Id.* at USAA-CIC_Bell_000034.

## ANALYSIS

The plaintiff brings four claims against USAA: (1) breach of insurance contract, (2) breach of the duty of good faith and fair dealing, (3) common law bad faith and willful and wanton breach of insurance contract, and (4) statutory bad faith breach of insurance contract. ECF No. 4 ¶¶ 46–71. Each of these claims is premised on the plaintiff's belief that the Incident is covered under the Policy. For its part, USAA brings a counterclaim against the plaintiff seeking a declaratory judgment that it is not obligated to pay any additional benefits to him. ECF No. 16 ¶¶ 39–47. The claims and counterclaim hinge on an interpretation of the Policy. Because the plaintiff asserts claims under the law of the state of Colorado, Colorado law controls the resolution of the substantive issues in this diversity case, and federal law controls procedural issues. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Racher v. Westlaw Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017).

Under Colorado law, "[i]nsurance contracts are construed in accordance with the general law of contracts." *Fed. Deposit Ins. Corp. v. Am. Cas. Co.*, 843 P.2d 1285, 1289 (Colo. 1992).

An insurance contract must be interpreted according to the plain and ordinary meaning of its language. *Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 829 (10th Cir. 2008); *Chacon v. Am. Fam. Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990). When the language used in a contract is plain and its meaning is clear, the agreement must be enforced as written. *In re May*, 756 P.2d 362, 369 (Colo. 1988) (en banc); *Fire Ins. Exch. v. Rael by Rael*, 895 P.2d 1139, 1142 (Colo. App. 1995). Courts should be wary of rewriting contract provisions and should give the words contained in the contract their plain and ordinary meaning, unless contrary intent is evidenced within the contract itself. *Cyprus Amax Mins. Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003); *see Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 902 (10th Cir. 2006). Courts may neither add provisions to extend coverage beyond that for which the parties contracted nor delete provisions to limit coverage. *Cyprus Amax*, 74 P.3d at 299. A court's construction of a policy's provisions "must be fair, natural, and reasonable rather than strained and strictly technical." *Massingill v. State Farm Mut. Auto. Ins. Co.*, 176 P.3d 816, 825 (Colo. App. 2007) (citing *Pub. Serv. Co. v. Wallis & Cos.*, 986 P.2d 924, 939 (Colo. 1999)). When a provision in an insurance policy is clear and unambiguous, the intent of the parties is determined from the plain language of the contract itself, and extrinsic evidence is not admissible to reveal that intent. *Radiology Pro. Corp. v. Trinidad Area Health Ass'n*, 577 P.2d 748 (Colo. 1978) (en banc).

"The insured must demonstrate causation necessary to bring a loss within the limits of the insurance contract's coverage." *Colo. Intergov'tal Risk Sharing Agency v. Northfield Ins. Co.*, 207 P.3d 839, 842 (Colo. App. 2008). However, when an insurance company seeks to limit or exclude coverage under the terms of an insurance policy, the insurer bears the burden of proving

that a particular loss falls within an exclusion in the contract. *Id.* If a limitation or exclusion in an insurance contract is unambiguous, then that limitation or exclusion must be enforced. *Id.*

The defendant seeks summary judgment on the basis that the plaintiff cannot meet his burden of establishing that the Policy provides coverage. ECF No. 39 at 12. USAA argues that the stipulated facts establish that there is no genuine dispute that the basement water damage was caused "when surface or ground water seeped through the building or foundation" of the Property, *id.*, and that the water exclusion in the Policy bars coverage. *Id.* at 12–18.

The Policy excludes coverage for any damage "caused directly or indirectly by . . . [w]ater damage arising from, caused by or resulting from human or animal forces, any act of nature, or any other source." *Id.* at USAA-CIC_Bell_000034. This includes "[f]lood, surface water, waves, tidal waves, storm surge, tsunami, any overflow of a body of water, or spray from any of these, whether or not driven by wind" and "[w]ater or water-borne material below the surface of the ground, including water which exerts pressure on or seeps through a building, sidewalk, driveway, foundation, swimming pool or other structure." *Id.* And this exclusion applies regardless of whether there were other causes of the loss or "other causes or events act concurrently or in any sequence with the excluded event to produce the loss." *Id.* The parties stipulated that the water that accumulated in the Property's basement on May 11, 2023 coincided with a period of heavy rainfall in the area of the Property and did not originate from an identifiable location within the house. ECF No. 37 ¶¶ 6–7, 9. They also agree that the plaintiff has not had any pipes repaired in the interior of the Property since the Incident other than the basement baseboard pipes, and that no surface water or ground water has entered the Property during that time. *Id.* ¶ 8.

Given these facts and the Policy's language, the Policy excludes coverage for the Property's water damage. Water from outside the dwelling entered the basement, causing damage. The plain, unambiguous language of the Policy excludes coverage for such damage. Colorado courts have found that similar policy language "does not make any distinction among the sources or causes of the water damage," and "[t]o find such a distinction would be to disregard some terms and add other terms to the contract, which [the court is] not at liberty to do." *Thompson v. State Farm Fire & Cas. Co.*, 165 P.3d 900, 902 (Colo. App. 2007) (pointing to "the lead-in clause of" the exclusion paragraph, which tracks the first paragraph to the exclusion included in the Policy). There is no ambiguity to this language.

The plaintiff resists this conclusion. ECF No. 42 at 12. He theorizes that "settling, cracking, shrinking, bulging, or expansion" of the foundation occurred and caused water damage. *Id.* at 13. In his view, the Policy covers the Incident under such a scenario, creating a genuine dispute of material fact. *Id.*

His thesis lacks factual support. The plaintiff cites no record evidence for his proposed causal chain, instead averring that yet-to-be-named expert testimony will prove his point. *Id*. But "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). Merely promising future expert testimony does neither one. To the extent he intends to invoke the Court's ability to defer decision under Fed. R. Civ. P. 56(d), he "must submit an affidavit (1) identifying the probable facts that are unavailable, (2) stating why these facts cannot be presented without additional time, (3) identifying past steps to obtain evidence of these facts, and (4) stating how additional time would allow for rebuttal of the adversary's argument for summary judgment." *Cerveny v.*

*Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017). He did not do so. Instead, he offers a "mere assertion[ ] that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable." *Handy v. City of Sheridan*, 636 F. App'x 728, 735 (10th Cir. 2016) (unpublished). To be sure, "[r]equests for further discovery should ordinarily be treated liberally," but "relief under rule 56(d) is not automatic." *Hamric v. Wilderness Expeditions, Inc.*, 6 F.4th 1108, 1119 (10th Cir. 2021). A mere allusion to unnamed potential evidence will not do.

The plaintiff also briefly suggests that there is a factual dispute about whether the water that caused the damage came from outside. ECF No. 42 at 14. But he stipulated that the "water that caused the Incident did not originate from an identifiable location within the house." ECF No. 37 ¶ 9. If it did not originate from within the house, it must have come from outside the house. That stipulation could leave open the theoretical possibility that the water came from an unidentifiable location within the house, but the plaintiff adduces no record evidence of such origin. In short, he adduces no evidence creating a factual dispute about the water's origin.

Moreover, his foray's legal foundation is equally faulty. He points to a portion of "Section 1 — Losses We Do Not Cover" in the policy indicating that "[i]f items 1.f. through 1.p. above cause water damage which is not otherwise excluded, we cover the resulting water damage." *Id*. at USAA-CIC_Bell_000032–33. And section 1.k above that excerpt does refer to "[s]ettling; [or] cracking . . . of . . . foundations." *Id.* But the relevant portion brings water damage caused by such events into coverage only if it "is not otherwise excluded." *Id*. at USAA-CIC_Bell_000033.

Here, it is otherwise excluded. The very next section of the Policy makes clear that there is no coverage for any damage "caused directly or indirectly by . . . [w]ater damage arising from, caused by or resulting from human or animal forces, any act of nature, or any other source." *Id*.

at USAA-CIC_Bell_000034. This includes "[f]lood, surface water, waves, tidal waves, storm surge, tsunami, any overflow of a body of water, or spray from any of these, whether or not driven by wind" and "[w]ater or water-borne material below the surface of the ground, including water which exerts pressure on or seeps through a building, sidewalk, driveway, foundation, swimming pool or other structure." *Id*. And this exclusion applies regardless of whether there were other causes of the loss or "other causes or events act concurrently or in any sequence with the excluded event to produce the loss." *Id*. It therefore applies even to the plaintiff's theory that foundation settling or cracking caused his water damage. *See Ark. Valley Drilling, Inc. v. Cont'l W. Ins. Co*., 703 F. Supp. 2d 1232, 1239 (D. Colo. 2010) (considering similar exclusion for underground water); *Goodrich v. Garrison Prop. & Cas. Ins. Co*., 526 F. Supp. 3d 789, 799–800 (D. Nev. 2021) (finding that water damage was the proximate cause of the loss and, therefore, coverage was excluded under similar policy language). That entitles the defendant to summary judgment on its counterclaim seeking a declaration that the Policy did not cover the plaintiff's loss. Given that the plaintiff must show a "failure to perform the contract by the defendant" on his breach of contract claim, *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992), this conclusion also entitles the defendant to summary judgment on that claim.

That leaves the plaintiff's claims for breach of the duty of good faith and fair dealing, common law bad faith and willful and wanton breach of insurance contract, and statutory bad faith breach of insurance contract. "It is settled law in Colorado that a bad faith claim must fail if, as is the case here, coverage was properly denied and the plaintiff's only claimed damages flowed from the denial of coverage." *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co*., 558 F.3d 1184, 1193–94 (10th Cir. 2009); *Johnson v. Am. Nat'l Prop. & Cas. Cos*., No. 17-cv-02218-WJM-KMT, 2019 WL 463026, at *5 (D. Colo. Feb. 6, 2019) (finding that common law

and statutory bad faith breach of contract and unreasonable delay or denial of insurance benefits claims failed because the court concluded that the insurer did not owe benefits to the plaintiffs). These claims therefore fall with the conclusion that the Policy did not cover the water damage at issue here.

The plaintiff protests. Making bad-faith claims depend on the existence of coverage, he says, renders Colo. Rev. Stat. § 10-3-1104 a nullity. ECF No. 42 at 18. But he cites to no legal authority indicating that an insurance company can be held liable by an insured under that statute absent applicable coverage. Nor has the Court found any.

In all events, the plaintiff cannot enforce Colo. Rev. Stat. § 10-3-1104. It is part of the Colorado Unfair Claims—Deceptive Practices Act ("UCDPA"), Colo. Rev. Stat. §§ 10-3-1101 to 1114, which "vests the Insurance Commissioner with power to investigate specifically defined acts and practices of insurers and to enforce regulatory penalties." *Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 51 (Colo. 2001). But "[e]xcept as provided in sections 10-3-1115 and 10-3-1116, nothing in" the UCDPA "shall be construed to create a private cause of action based on alleged violations of" it, including violations of Section 1104. Colo. Rev. Stat. § 10-3-1114; *see Showpiece*, 38 P.3d at 51. To the extent the plaintiff relies on Section 1104 as granting him a legal right to assert a bad-faith claim in the absence of applicable coverage, then, his protest is misplaced. *Horace v. Cincinnati Ins. Co.*, No. 24-cv-00461-SBP, 2024 WL 3069270, at *3 (D. Colo. June 20, 2024) (granting summary judgment on claim brought by insured under Colo. Rev. Stat. § 10-3-1104(1)). Colo. Rev. Stat. §§ 10-3-1115 and 1116 do provide private rights of action, but both pertain to an unreasonable delay or denial in "benefits owed" to a first-party claimant. *See Sipes v. Allstate Indem. Co.*, 949 F. Supp. 2d 1079, 1084 (D. Colo. 2013). There can be no unreasonable delay or denial when benefits are not owed.

Accordingly, the plaintiff's protest that his other claims survive against a finding that the Policy did not cover the event in question is without merit.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Defendant/Counterclaim Plaintiff's Amended Motion for Complete Summary Judgment, ECF No. 39, is **GRANTED**.

It is further ORDERED that **JUDGMENT SHALL ENTER** in favor of the defendant/counterclaim plaintiff, USAA Casualty Insurance Company, and against the plaintiff, Carter B. Bell, on USAA's counterclaim.

It is further ORDERED that each of the claims asserted by the plaintiff against the defendant are **DISMISSED with prejudice**.

The defendant is **AWARDED** its costs to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

It is further ORDERED that this case is **CLOSED**. DATED this 22nd day of August, 2025, at Denver, Colorado.

BY THE COURT:

_____

Cyrus Y. Chung
United States Magistrate Judge